IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN DAN BUMPHUS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-CV-312-SMY-DGW |
| | ) |
| UNIQUE PERSONNEL CONSULTANTS, KRISTA FINDLAY, JENNIFER KATHERINE YATES-WELLER, HENNESSY AND ROACH P.C., ANDREW G. TOENNIES, and SYNERGY COVERAGE SOLUTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff John Dan Bumphus Jr. filed this lawsuit *pro se* against numerous defendants alleging violations of Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and asserting unlawful discharge from employment, retaliation, and intentional infliction of emotional distress under Illinois state law.[1] Now before the Court is Defendant UniQue Personnel Consultant's Motion for Summary Judgment (Doc. 97). Bumphus filed a response (Doc. 110). For the following reasons, the motion is **GRANTED**.

---

[1] On March 30, 2018, this Court dismissed Bumphus's claims under Title VII, the ADEA, the GINA, and his state law claims. The Court also dismissed his claims against Defendants Synergy Coverage Solutions, L.L.C., Jennifer Katherine Yates Weller, Hennessy & Roach, P.C., Andrew Toennies, and Krista Findlay (*see* Doc. 126).

## Background

Plaintiff John Dan Bumphus, Jr. was diagnosed with post-traumatic stress disorder ("PTSD") in 2001 (Doc. 97-1, p. 116). His treatment consists of counseling with a therapist once every two or three months. *Id*. In addition to PTSD, Bumphus suffers from spinal stenosis and underwent a spinal fusion surgery in 2006. *Id*. During his deposition, Bumphus testified that no medical professional has precluded him from seeking work due to health reasons or concluded that he is incapable of working. *Id*. at p. 78.

In June 2015, Bumphus applied for a position with UniQue Personnel Consultants ("UniQue") (Doc. 97-1, p. 21; pp. 24-25; *see also* Doc. 97-2). UniQue is a placement agency that offered permanent as well as short or long-term temporary assignments to its applicants (Doc. 97-2). Unique would contact the applicant with more information regarding a position should a match be made. *Id*. An applicant was not under any obligation to accept any assignment or position recommended by UniQue. *Id*. UniQue applicants were required to call UniQue offices once per week when looking for work (Doc. 97-1, pp. 23-24; Doc. 97-2).

On the application, Bumphus indicated that he could perform work during any shift and was able to lift up to 40 pounds (Doc. 97-1, p. 22; Doc. 97-2). Bumphus did not indicate that he had any physical or mental limitations (Doc. 97-1, p. 24; Doc. 97-2). On June 17, 2015, Bumphus accepted a job at the Yazaki Warehouse ("Yazaki") that paid $10.50 per hour (Doc. 97-1, pp. 27-29). He again did not mention any physical or mental limitations at the time. *Id*.

Bumphus began working the third shift at Yazaki on the evening of June 21, 2015 (Doc. 97-1, pp. 29-30). His work involved various tasks, including the removal of automotive parts from crates and repacking them. *Id*. at pp. 30-32. Bumphus testified that, at some point during the shift, he felt pain in his back when manipulating what he described as a large harness. *Id*. at

pp. 30-31, 37-38. Bumphus was able to perform all other aspects of his job, including moving smaller objects and completing paperwork. *Id*. Bumphus informed his shift supervisor, Dana Felton, about his back pain and difficulty maneuvering the harnesses. *Id*. at pp. 30-34. He was able to complete his work assignments. *Id*.

On July 13, 2015, Bumphus moved to the second shift, as the third shift had been discontinued (Doc. 97-1, pp. 39-40). He testified that, at the beginning of the shift, he was informed by supervisor Donna May that there was mandatory overtime. *Id*. at p. 42. An hour later, Bumphus approached May and told her that he had to leave due to pain in his back. *Id*. at pp. 44-46. According to Bumphus, May responded that she would have to "write him up," to which Bumphus replied, "that sounds fair." *Id.*

The following morning, Bumphus spoke with UniQue's Krista Findlay about his back issues and the mandatory overtime (Doc. 97-1, pp. 47-50). According to Bumphus, Findlay assured him that "the conversation" about his back "would never come up again," and that it was "totally unacceptable" for him to work through his pain to complete a task. *Id*. at pp. 49-50.

Bumphus continued to work on the second shift at Yazaki from July 14, 2015 until July 16, 2015 (Doc. 97-1, p. 50). During this time, Bumphus was able to complete his assignments, including "running" two tables one night, and three tables another night, which involved walking and moving parts around. *Id*. at p. 51. On July 16, 2015, Bumphus spent an hour "pulling boxes out" and "recounting pieces" while in search of a missing piece of equipment. *Id*. at pp. 51-52. As he was preparing to leave for the day, May questioned him about leaving when there was still work to complete. *Id*. at p. 52. In response, Bumphus asked if she had spoken with Findlay, and May indicated that she did not know what he was referring to. *Id*. at p. 52. Bumphus then reiterated that he was leaving and left the facility. *Id*. at pp. 52-53.

On July 17, 2015, Bumphus spoke with Findlay in person (Doc. 97-1, pp. 55-58). During this conversation, he volunteered to provide proof of his back condition. *Id*. at pp. 57-58. Bumphus went to his physician's office and obtained what he describes as "four or five pages" containing CT scan results. *Id*. at pp. 62-64. He gave Findlay the documents along with a copy of his book, "Necessary Candor." *Id*. at pp. 62-64. When Bumphus gave Findlay the records and book, Findlay told Bumphus that he needed a note from a physician explaining his limitations. *Id*. at p. 65.

On July 23, 2015, Bumphus delivered a physician's note to Findlay (Doc. 97-1, pp. 66-69, Doc. 97-3). The note stated: "Please exempt patient from mandatory overtime that involves heavy lifting" (Doc. 97-3). Findlay offered Bumphus another position that paid $8.25 per hour and he declined (Doc. 97-1, pp. 69-70).

Bumphus did not return to Yazaki after July 16, 2015 (Doc. 97-1, p. 67). Bumphus testified that no one at UniQue ever told him that he could not inquire about available positions and no one ever told him that he was terminated. *Id*. at pp. 70-71, p. 78.

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. If the

evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986).

The American with Disability Act ("ADA") prohibits discrimination against a disabled individual "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As a threshold matter, an individual seeking to assert claims under the ADA must show that he or she is disabled, and that he or she is a "qualified person" for the job position in question. *See Hoffman v. Caterpillar, Inc.,* 256 F.3d 568, 571–72 (7th Cir. 2001). Disability under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A qualified person is one who "satisfies the pre-requisites for the position" and "can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 563 (7th Cir. 1996).

Bumphus does not contend that he had a record of an impairment or was regarded as having an impairment. Thus, the question is whether he actually had a physical or mental impairment that substantially limited a major life activity under the ADA's first definition of disability. Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Steffen v. Donahoe,* 680 F.3d 738, 745–46 (7th Cir. 2012). When determining whether a disability "substantially limits" a person from performing such an activity, courts consider "the nature and severity of the impairment; the duration or expected duration of the impairment; and the

permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment…generally, short-term, temporary restrictions, with little or no long-term impact, are not substantially limiting and do not render a person disabled for purposes of the ADA." *Serednyj v. Beverly Healthcare, LLC,* 656 F.3d 540, 554 (7th Cir. 2011) (citations omitted).

Bumphus maintains that his spinal stenosis and PTSD rendered him disabled under the ADA. However, there is insufficient evidence in the record establishing that Bumphus is disabled within the meaning of the ADA. Bumphus testified that his back pain, not his PTSD, was the only problem he had while working for UniQue. He further testified that he was able to perform nearly all aspects of his warehousing job and that his back pain did not hinder his ability to be productive. Bumphus states that he was able to run multiple tables and he believed that he was doing a good job in his position. Although Bumphus procured a physician's note requesting that he be exempt from mandatory overtime "that involves heavy lifting," lifting limitations do not qualify as a disability under the ADA.

In *Contreras v. Suncast Corp*., 237 F.3d 756, 763 (7th Cir. 2001), the Seventh Circuit addressed the issue of lifting limitations in the context of the ADA. The plaintiff, an injured forklift operator, argued that he was substantially limited in the major life activity of working because he was unable to lift in excess of 45 pounds for a long period of time, unable to engage in strenuous work, and unable to drive a forklift for more than four hours a day. *Id*. The Seventh Circuit disagreed, stating that even after taking the plaintiff's claims as fact, it failed to see "how such inabilities constitute a significant restriction on one's capacity to work, as the term is understood within the ADA." *Id.* at 763. The court noted that other Circuits have also found

that weight limitations do not qualify as a substantial limitation on working and, thus, a disability under the ADA.

Consistent with Seventh Circuit precedent, even viewing the evidence in the light most favorable to Bumphus, this Court concludes that there is no evidence that his spinal stenosis substantially limited any major life activities. Because Bumphus has presented no evidence that even suggests he is precluded from a broad class of jobs, he has failed to establish that he is disabled within the meaning of the ADA.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly. All pending motions are **TERMINATED** as **MOOT**.

**IT IS SO ORDERED.**

DATED: August 30, 2018

                                                               **s/ Staci M. Yandle**
                                                               **STACI M. YANDLE**
                                                               **United States District Judge**